PARK & TILFORD IMPORT CORPORATION, A CORPORATION OF THE STATE OF NEW YORK, DULY AUTHORIZED TO TRANSACT BUSINESS IN THE STATE OF NEW JERSEY, RESPONDENT, v. PASSAIC NATIONAL BANK AND TRUST COMPANY, A NATIONAL BANKING CORPORATION, AND EDWARD H. RODEN, APPELLANTS.

Argued October 21, 1942—Decided January 22, 1943.

For the appellants, *Feder & Rinzler* (*Joseph A. Feder* and *Jack Rinzler*).

For the respondent, *Osborne, Cornish & Scheck* (*Ervin S. Fulop*).

The opinion of the court was delivered by

BODINE, J. The defendant, a national banking corporation engaged in business in the City of Passaic, and Edward H. Roden, manager of its credit department, appeal from a judgment in favor of the plaintiff.

On October 7th, 1938, the plaintiff wrote to the defendant,

as follows: "Any information you can give us concerning the moral and financial responsibility of O. M. Hanson will be greatly appreciated, and of course held in strict confidence."

The bank replied October 8th, 1938, as follows (italics ours): "Olive Mae Hanson, proprietor of the Broadway Wine & Liquor Shop, the subject of your recent inquiry, has carried an account with us since December, 1933, *balances* this year *averaging in a moderate three figure amount,* and we have extended accommodation up to low four figure amounts, with that amount outstanding to-day. *Our experience with the account has been satisfactory* and checkings which we have made in the trade indicate that she is sold in amounts up to $2,300 on regular terms, with payments running from prompt to thirty days slow, although the account was generally classified as satisfactory. Mrs. Hanson's financial statement does not show a large worth but we have been favorably impressed with her and her husband. They operate under light expense and, we believe, have made some progress during the past year, having paid in full a chattel mortgage, which was formerly on the store, during the early part of 1938. They give close attention to the business and cater to a good class of trade. Yours very truly, Edward H. Roden, Manager, Credit Department." And in red ink at the foot of the letter appeared the following: "Confidential information which is furnished at your request and without any responsibility on the part of the bank or its officers."

The plaintiff's credit manager had also previously written Dun & Bradstreet and had received from them a report concerning the subject of the inquiry.

The report shows that she was 32 years of age, had previously been employed as a secretary and that her husband assisted in the store and had been discharged in bankruptcy in 1937. The report also showed that a chattel mortgage given in 1937 was canceled January 1st, 1938.

The statement shows that as of May 16th, 1938, cash in bank was $91, accounts receivable $422, merchandise nearly $8,000, fixtures and equipment $900, and a 1938 truck valued at $705, and an equity in a 1938 Oldsmobile of about $800; *accounts payable nearly* $5,000. The trade reports were

stated to show that payments were slow, and the capital limited with very heavy indebtedness.

The plaintiff claimed to rely upon the bank's letter rather than on the Dun & Bradstreet report. It sold a large shipment of liquor for which it was not paid, and after the bankruptcy of Mrs. Hanson brought this action in order to require the bank and its credit manager to pay for the loss caused by its own poor judgment.

The basis of the present action sounds in deceit. The words, "Confidential information which is furnished at your request and without any responsibility on the part of the bank or its officers" have a very definite meaning. However, it will not be necessary to determine whether they barred the present action or not, since fraud seems not to have been proved. The liability of a bank for the representations of its officers as to the credit of third parties is treated in 7 *Am. Jur.* 198; 9 *C. J. S.* 415, and seems to require merely good faith in the answer made. The practice of furnishing such information is, however, unwise from the public standpoint. Banks are not chartered to furnish credit ratings for their customers. If liabilities were so created they would not appear upon the books of the bank and would not be observable in audits or examinations. Such reports must, of necessity, be vague since the exact financial condition of a customer is highly confidential.

The evidence in this case at the close of plaintiff's case falls far short of the requirements of law.

The plaintiff desired to sell merchandise to Hanson. It was dissatisfied with the credit report of Dun & Bradstreet received in the regular course of business. It desired information as to the moral responsibility of Mrs. Hanson. It needed to know nothing further as to her financial responsibility because clearly that was not good. The falsity in the bank's statement is chiefly claimed to be, however, in two particulars: (1) that the average balance was in a moderate three figure amount, when it is said not to have been; and (2) that the bank's experience with the account was satisfactory, when it should not have been so characterized.

The falsity specified as to balance is said to be in this: that an average of $230 shown in the bank's records is not

a moderate but low balance. We do not think that the word "moderate" can be used with such exactness. "Moderate" is not a word of exactness. It is quite the contrary. Moderate three figure balances must be understood in the usual sense of the word and cannot have any meaning which the receiver of the letter may ascribe it. Certainly, there is no reason to suppose that it meant more than $300. "Moderate" as, in part, defined in Webster's New International Dictionary, is "limited in quantity" and so it is generally understood.

Accounts in banks fluctuate. There are times when very good accounts are very low or overdrawn. In many instances, the bank is satisfied. The bank's letter and the Dun & Bradstreet report indicated bank loans still outstanding. True, the bank did not disclose if it had any information to the effect that Mrs. Hanson had proved a disappointing debtor in her dealings with Bellow & Company and the McKesson Liquor Company. It did state that her business dealings were generally classified as favorable. But the plaintiff knew from the Dun & Bradstreet report that she was slow pay, and if they had cared to analyze the report they would have realized that the capital existed, if at all, only so long as the merchandise could be quickly sold at good figures and creditors were not too pressing. The bank was stating its conclusion as to their satisfactory dealings with her. The letter was perhaps somewhat generous but it stated no fact shown to be false within the knowledge of the officer writing the same. Webster's New International Dictionary, in part, defines "satisfactory"—"sufficient as a satisfactory account."

It does not always follow that because a note is renewed in full that an account is unsatisfactory. The reason given for the renewal may have been perfectly satisfactory to the bank. The point of the whole case is that plaintiff desired to sell its merchandise. Dissatisfied with the credit report received from Dun & Bradstreet, it sought information as to the moral risk in a sale to Mrs. Hanson, and when it received the bank's letter it made the sale.

There is not a word of testimony to indicate that any representations made therein were false. There was nothing in the correspondence between the parties that could have

induced any reasonable person to act thereon. The bank was only giving its best judgment of the moral and financial situation of Mrs. Hanson's business. No fact stated was shown to be false or was there evidence of an intention to deceive, or to induce the plaintiff to make a sale.

The bank in the letter stated that she owed them money. This was true. That the trade had extended her credit up to the amount stated. This was true. Her dealings with those in the trade were stated from inquiry to be *generally* satisfactory. Obviously, this is a statement that some had experienced difficulties with her. The bank was merely giving its opinion. With full and complete information at hand, the plaintiff sought to build a case upon the mere statement by the plaintiff's credit manager that he was induced to make the sale on the strength of the bank's letter. There is nothing, however, in that letter which would induce a reasonable man so to do, unless he desired to clear the warehouse and bring law suits for the purchase price of the goods sold.

There is no reason why the bank loan should not have been reduced from the general funds of Mrs. Hanson before bankruptcy. The bank may or may not have benefited by the plaintiff's sale to her. The plaintiff made the sale without reason and sought to charge the bank in deceit when there was no proof to sustain the charge. The plaintiff's credit manager chose to ascribe special meanings to ordinary words. There is nothing in the record to show that in banking parlance those words have any special meaning; but as shown in ordinary parlance their meaning is quite different from that ascribed to them by plaintiff's credit manager. If he would rewrite the bank's letter he must show that bankers have a special meaning for ordinary words. Not that he has.

The motion for nonsuit should have been granted. The judgment is reversed, with costs.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Case, Bodine, Donges, Heher, Perskie, Porter, Colie, Dear, Wells, Rafferty, Hague, Thompson, JJ. 14.